[No. 37569.   Department One.   May 6, 1965.]

EDWARD BREWER *et al., Appellants,* v. ORIARD POWDER COMPANY, *et al., Respondents.**

*John R. Lewis, Gibson & Palmer,* and *Riner E. Deglow,* for appellants.

*Clarence M. George,* for respondent Oriard Powder Company.

*Bogle, Bogle & Gates, Ronald E. McKinstry, Peter D. Byrnes,* and *Gerhardt Morrison,* for respondent Atlas Chemical Industries, Inc.

*Reported in 401 P.2d 844.

RYAN, J.†—This is an action to recover damages for personal injuries suffered by plaintiffs (appellants) while employed by Murphy Brothers, who had contracted for construction work on a United States missile site. The injuries, which were very serious, were caused by a premature explosion of dynamite which had been issued to them by their employer to be used in blasting holes for the construction. The plaintiffs' employer had purchased the dynamite from Oriard Powder Company (hereinafter referred to as Oriard). The dynamite had been manufactured by Atlas Chemical Industries (hereinafter referred to as Atlas). The dynamite and essential detonating components were sold and delivered by Atlas to Oriard and, in turn, to Murphy Brothers in the original containers.

The plaintiffs alleged that Atlas had manufactured and sold dangerous, unfit and defective dynamite explosives, primers, blasting caps, related components and accessories which were unfit and dangerous for normal use. They further alleged that Atlas had failed to adequately test or inspect these explosives prior to sale and had knowledge that they were defective and dangerous.

The plaintiffs' complaint stated that Oriard was engaged in the sale of these unfit, defective and dangerous products and that it "had notice of circumstances of the dangers relating to said products and their use by the public and was negligent in failing to test and experiment with said explosives before its products were sold to the public."

Their third cause of action was that the defendants breached their express and implied warranties of fitness in the manufacture, distribution and sale of the products involved.

In a fourth cause of action, the plaintiffs alleged that defendants are absolutely liable to plaintiffs for the injuries and damages sustained.

The defendants' answers to this complaint contain general denials and allegations of contributory negligence and

†Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to art. 4, § 2(a) (amendment 38), state constitution.

assumption of risk. The defendant Oriard asks in the event the plaintiffs recover judgment against Oriard that it, in turn, be awarded judgment against Atlas.

The trial court declined to grant Oriard's motion for summary judgment but dismissed plaintiffs' complaint with prejudice and awarded judgment in favor of the defendants at the conclusion of the opening statement of counsel for the plaintiffs. This is an appeal from the judgment of dismissal.

Counsel for the appellants in the opening statement admitted that appellants were not the purchasers of the dynamite and that there was no evidence of a specific act of negligence. In the opening statement, counsel said: " . . . an implied breach of warranty actually is the gist of this action."

The question to be resolved by us in this case is: Is the theory of breach of implied warranty of fitness applicable under the facts and circumstances of this case?

The trial judge was reluctant to grant respondents' motion for dismissal but felt compelled to do so because of the case of *Kasey v. Suburban Gas Heat of Kennewick, Inc.*, 60 Wn.2d 468, 374 P.2d 549. In that case, the plaintiff in whose building an explosion occurred brought suit on the theories of negligence and breach of implied warranty of fitness for the purpose intended. Plaintiff had purchased propane gas from the defendant. There was evidence from which the jury found that this gas contained an excessive amount of water causing a malfunction of the controls in plaintiff's floor furnace. There was further evidence of improper workmanship by one of defendant's employees on the pilot light and generator of the furnace. The other plaintiffs owned a business situated some distance away but the explosion caused them serious damage also.

There was clearly a privity of contract between the defendant and the first plaintiff mentioned. The other plaintiffs, however, purchased nothing from the defendant, so there was no privity of contract as far as they were concerned. The jury, in answering interrogatories, found that the negligence of the defendant was a proximate cause of

the explosion. This court stated that the finding of negligence was sufficient to dispose of the case and judgment for the plaintiffs was sustained. However, we went beyond this and discussed the theory of implied warranty of fitness, stating that this theory was inapplicable to the plaintiffs who had not purchased anything and, although the trial court committed error in instructing on that theory, a new trial was not required because of the finding of negligence.

It should be pointed out that, unlike the appellants in the case at bar, the second plaintiffs in the *Kasey* case were entirely outside of the chain of distribution of the product causing the injury. In the case with which we are now concerned, the appellants, although not "purchasers," were "users" or "consumers."

The right of an injured person to recover from a manufacturer or retailer for breach of implied warranty in the absence of privity of contract presents what might well be described as the Sargasso Sea of the law. It is filled with entangling theories, rules and doctrines from which courts throughout the United States and England have been attempting to extricate themselves for decades. Since 1842, when the Court of Exchequer decided the case of *Winterbottom v. Wright,* 10 M. & W. 109, 152 Eng. Rep. 402, the law has been constantly developing and growing as it keeps pace with changing social philosophy and expanding methods of manufacturing and distribution. There is a certain and steady trend in the direction of fixing greater responsibility in manufacturers and sellers. Prosser on Torts ch. 19, p. 658, *et seq.* (3d ed.)

This court was in the vanguard of the movement to solve these vexing problems when we decided the case of *Mazetti v. Armour & Co.,* 75 Wash. 622, 135 Pac. 633. In that case, it was held that a manufacturer may be liable for damages, irrespective of privity of contract, in the manufacture and sale of food products. The *Mazetti* case extended that liability to a restaurateur who had purchased from a retail grocer contaminated and impure canned meat manufactured by the defendant. This court discussed the

various theories upon which other courts had reached similar conclusions and stated as a basis of the decision, p. 630:

> Our holding is that, in the absence of an express warranty of quality, a manufacturer of food products under modern conditions impliedly warrants his goods when dispensed in original packages, and that such warranty is available to all who may be damaged by reason of their use in the legitimate channels of trade.

It has been well established by this court that privity of contract is not required in order that there be an implied warranty of fitness where the article involved is food, clothing, drugs, or cosmetics. See *Nelson v. West Coast Dairy Co.,* 5 Wn.2d 284, 105 P.2d 76, 130 A.L.R. 606; *Geisness v. Scow Bay Packing Co.,* 16 Wn.2d 1, 132 P.2d 740; *Ringstad v. I. Magnin & Co.,* 39 Wn.2d 923, 239 P.2d 848; *Martin v. J. C. Penney Co.,* 50 Wn.2d 560, 313 P.2d 689, 80 A.L.R. 2d 697; *LaHue v. Coca Cola Bottling, Inc.,* 50 Wn.2d 645, 314 P.2d 421; *Esborg v. Bailey Drug Co.,* 61 Wn.2d 347, 378 P.2d 298. The reason for these exceptions would appear to be that these items are manufactured and sold with knowledge that they will come into direct contact with the human body either externally or internally.

We held in *LaHue v. Coco Cola Bottling, Inc., supra,* that, in an action by a remote vendee against the manufacturer of bottled beverages, privity of contract was not an essential element and this was an exception to the general rule of nonliability. Although that suit was based upon the theory of breach of implied warranty, the court pointed out that the liability rests more upon a theory of violation of duty to members of the general public to protect them from injuries due to the wrongful manufacture or distribution of food products or beverages.

We held in *Ringstad v. I. Magnin & Co., supra,* and *Martin v. J. C. Penney Co., supra,* that there is an implied warranty of fitness in the sale of clothing by a retailer and that one who receives such clothing as a gift from the purchaser has a cause of action for injuries sustained against the retailer on the theory of implied warranty.

In *Esborg v. Bailey Drug Co., supra,* we extended the doctrine of implied warranty without privity of contract to a cosmetic intended for application to the hair, scalp or skin.

In the carefully considered opinion in *Freeman v. Navarre,* 47 Wn.2d 760, 766, 289 P.2d 1015, this court recognized the changes which have appeared in the law relative to the privity rule. We stated:

> The exception to the privity of contract doctrine has been extended in our state to so-called inherently dangerous instrumentalities; *Baxter v. Ford Motor Co.,* 168 Wash. 456, 12 P. (2d) 409, 15 P. (2d) 1118, 88 A.L.R. 521; *Bock v. Truck & Tractor, Inc.,* 18 Wn. (2d) 458, 139 P. (2d) 706.

This court emphasized the continuing trend away from the privity rule in warranty cases.

In the comparatively recent case of *Dipangrazio v. Salamonsen,* 64 Wn.2d 720, 393 P.2d 936, this court was again called upon to consider the liability of a manufacturer to a user who had no privity of contract with either the manufacturer or any other person in the chain of distribution. We pointed out the confusion between the theories of breach of implied warranty and negligence and stated that the erroneous assumption that there must be privity of contract between the parties in order to impose liability for breach of implied warranty of fitness does not apply to the claim of a third party who has been injured from use of a product of a remote manufacturer. In that case, the plaintiff was injured when he fell through a glass door in a home where he was a guest. We stated, p. 735:

> The seller's warranty is a curious hybrid of tort and contract. Prosser, Law of Torts (2d ed.) § 83, p. 493. It has not lost its original tort character. We recognized this in *Esborg v. Bailey Drug Co.,* 61 Wn. (2d) 347, 378 P. (2d) 298 (1963), and *LaHue v. Coca Cola Bottling, Inc.,* 50 Wn. (2d) 645, 314 P. (2d) 421 (1957). Of course, if breach of actual representations can be proved and there is privity of parties, the action may be in contract; but primarily, a manufacturer's liability for having furnished an inherently dangerous product to the public sounds in tort. That the action is a product of the common-law decisions

has been recognized in a variety of situations. *Greenman v. Yuba Power Products, Inc.*, 27 Cal. Rptr. 697, 377 P. (2d) 897 (1962) and cases cited.

The *Greenman* case, cited in *Dipangrazio, supra,* undoubtedly goes beyond anything necessary for disposition of the case now before the court, since it is based upon strict liability without negligence or privity. As was stated in *Freeman v. Navarre, supra,* it seems that a searching judicial review of the privity rule is in order, but that such is not necessary for the disposition of the appeal in the case at bar. If impure food, flammable clothing, and toxic cosmetics are so inherently dangerous to the consumer or ultimate user that we waive the requisite of privity of contract, the exception certainly must be extended to dynamite or explosives. The manufacturer knows that dynamite and its components and accessories will finally be touched, handled and used by employees of the retail purchaser and, being aware of this, must be held to impliedly warrant the fitness of his product. Few commodities are more dangerous than dynamite and it can be far more lethal than canned food, housedresses, toothpaste, or lipstick.

Consequently, we now hold that a manufacturer of dynamite is liable to the ultimate user for breach of implied warranty of fitness without regard to privity of contract. In fairness to the trial judge who reluctantly felt constrained to dismiss this case following opening statement of counsel, it must be recognized that we are now dealing with new vistas in the field of implied warranty.

The appellants alleged in their complaint that Oriard had notice of the circumstances of the dangers relating to these explosives and their use by the public and was negligent in failing to test them before they were sold. The appellants further mentioned in their opening statement that they had never been warned of the possibility of premature explosion. Under these circumstances, we do not feel that Oriard is entitled to dismissal of the complaint against it and award of summary judgment at this time.

The judgment of the trial court dismissing appellants' claim with prejudice is reversed and the cause remanded for trial.

ROSELLINI, C. J., OTT, HUNTER, and HALE, JJ., concur.