[No. 39612.    Department One.    May 29, 1969.]

HAZEL BECK, *Appellant*, v. E. I. DU PONT DE NEMOURS & Co., INC., *et al.*, *Respondents.**

*Joseph T. Pemberton* and *Jacob L. Smith,* for appellant.

*Millard C. Thomas* (of *Elliott, Lee, Carney, Thomas & Smart*) and *John F. Biehle,* for respondents.

COLE, J.†—This is an action for personal injuries. Plaintiff appeals from the judgment of the trial court dismissing defendants, Du Pont and Washington Wholesalers.

Hazel Beck brought suit against respondents to recover for injuries allegedly sustained to her left eye, when liquid from the radiator of her car erupted and spattered in her face after pouring a can of radiator flush into the radiator.

Prior to the accident appellant purchased an old 1953 automobile for $153. After becoming aware that the radiator was rusty and leaked, she purchased a can of Du Pont "Fast Flush" from Washington Wholesalers. She drove home, left the motor running, read the label on the can and then poured the contents into the radiator. She then leaned over and looked down into the spout. As she did so some

*Reported in 455 P.2d 587.

†Judge Cole is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4 § 2(a) (amendment 38) state constitution.

type of eruption occurred causing liquid to get on her hands and eyes. She washed her hands and face but did not seek medical attention until the next morning. She was admitted to the hospital with a diagnosis of a moderate chemical burn of her left eye and was discharged 2 days later. Three weeks later she was examined by her physician who stated she had recovered from the burn.

Appellant testified she had considerable experience in maintaining automobile radiators, that she had always installed and drained her own anti-freeze, had flushed out radiators of various automobiles and had used the same radiator flush in the past with no incidents.

Appellant's expert witness testified that in the radiator in question, the passage was not clear and that there was a sizeable obstruction which might be a part of the baffle-plate or a deflector; that if liquid was added at a sufficient rate, a liquid block might occur, causing an entrapment of air and that when the liquid thinned, a small, belch-like eruption could occur. He further stated that such eruption would be about the magnitude of soap bubbles and that such entrapment of air could occur when other liquids, such as anti-freeze, were added to the radiator and that the eruption was not peculiar to the product in question. He believed that the eruption would not have occurred but for the presence of the obstruction. There was no evidence as to whether or not the radiator was in an unaltered structural condition as originally manufactured.

While Washington Wholesalers were named as respondents in this action, appellant does not challenge their dismissal in her assignments of error and consequently, in accord with ROA 43, the judgment of the trial court, with regard to Washington Wholesalers, is affirmed, and Du Pont will hereinafter be treated as the only respondent.

It is the contention of appellant that the trial court, in dismissing her case, drew conclusions based upon questions of fact and thereby invaded the province of the jury. The questions of fact in issue, according to appellant, are (1) whether the product was inherently dangerous and (2)

whether respondent had a duty to warn of the danger that the contents, when poured into a radiator, could errupt.

■ We have often stated that a challenge to the sufficiency of plaintiff's evidence admits the truth and all inferences that can be reasonably drawn therefrom. The evidence must be interpreted most strongly against the defendant and in a light most favorable to the plaintiff. Further, there is no element of discretion involved on the part of the trial court. *Davis v. Early Constr. Co.*, 63 Wn.2d 252 386 P.2d 958 (1963); *Lockett v. Goodill*, 71 Wn.2d 654, 430 P.2d 589 (1967).

Appellant first argues that respondent breached an implied warranty of fitness in that the product was inherently dangerous and defective. She also argues that respondent was negligent in failing to warn that the liquid could cause an eruption after being poured into the radiator.

If we assume that the product is inherently dangerous (although appellant has presented no evidence indicating that it is) appellant has still failed to produce any evidence to render respondent liable on an implied warranty theory. Even construing the evidence presented in a light most favorable to appellant, the record shows that appellant failed to prove that there was any defect in the product. Nothing was shown to indicate that the product was dangerous or that any defect in it caused her injury. While she did testify that her eye was burned from the spattering of liquid from the radiator, she failed to show that the liquid causing the injury was in fact the radiator flush. No evidence regarding the contents of the radiator was introduced and appellant admitted that other chemical additives might have been in the radiator. Finally, there was no evidence that appellant was injured by the product during its normal use. There was testimony from appellant's own expert witness that there was an obstruction in the radiator which caused an air block which in turn caused the eruption. Appellant offered no evidence that the obstruction was in the radiator when the automobile was manufactured or that her actions, pouring the flush into an obstructed radia-

tor, constituted normal use. As a consequence, appellant's argument is without merit. *See Brewer v. Oriard Powder Co.*, 66 Wn.2d 187, 401 P.2d 844 (1965) and cases cited therein.

Appellant's second contention is that respondent failed to warn of a dangerous condition in the product. This argument is also without merit. Again construing the evidence in a light most favorable to appellant, the record indicates that appellant could offer no evidence that such eruption had ever occurred before. In fact we again must point out that appellant's own witness indicated that it was the obstruction in the radiator that caused the eruption, not the product itself, and that such eruption could occur if other liquids were added. The warning on the label on the can stated that the product contained alkaline phosphate and could cause irritation to skin and eyes. The label suggested that if the liquid came into contact with the skin or eyes, that the area should be washed with water and medical attention should be sought if any got in the eyes. Appellant failed to show that the label was insufficient for the purpose for which the product was used and has also failed to show that respondent was in any way negligent.

Appellant also assigns error to the trial court's finding that she was contributorily negligent as a matter of law. Inasmuch as the record supports the trial court's decision that appellant's evidence was insufficient to establish liability on the part of respondent, it is not necessary for us to determine the issue of contributory negligence.

The decision of the trial court is affirmed.

FINLEY, HAMILTON, and McGOVERN, JJ., concur.

HUNTER, C. J. (dissenting)—I dissent. There is evidence in the record to show that the product "Fast Flush" is inherently dangerous when coming into contact with the skin and eyes. The respondent manufacturer sells this product for the particular use of flushing radiators. The evidence further shows that when a person pours a substance into a radiator it will on occasions erupt into that person's

face unless he is standing back from the radiator. It is the duty of the manufacturer to warn the user to avoid this potential danger in the use of the product for which it was manufactured. The general rule stated in 76 A.L.R.2d at 16, adopted by this court in *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 826, 435 P.2d 626, 630 (1967), is as follows:

> The rule as to when a manufacturer or seller must warn (or, stated differently, when he will be held negligent if he fails to warn) is this: a manufacturer or seller of a product which, to his actual or constructive knowledge, involves danger to users has a duty to give warning of such danger.

The evidence showing a propensity of a radiator to erupt when a fluid is poured into it, coupled with the evidence of the inherently dangerous nature of "Fast Flush" when in contact with the skin and eyes, raises a question of fact as to the existence of a latent danger to an inexperienced layman foreseeable to the manufacturer. Here there is no question that the "Fast Flush" was put to its intended use, and there is at least a jury question as to whether a warning should have been given to the purchaser to stand back while using this product. 1 L. Frumer & M. Friedman, Products Liability, § 8.01 (1968) states:

> The manufacturer's duty is not just to use reasonable care in designing or manufacturing his product. There may be a duty to warn even though the product is perfectly made. Many cases apply the rule that the manufacturer is under the duty to adequately warn of foreseeable and latent dangers attendant upon proper and intended use of his product.

The majority states there was no evidence that the burn to the appellant's eye was from the "Fast Flush" liquid; that it may have resulted from another substance which was in the radiator. This ignores the evidence that the eruption occurred shortly after the "Fast Flush" was poured into the radiator and that the product contained alkaline phosphate, admittedly dangerous as an irritant to the skin and eyes. To say that the injury to appellant's eye was from other substances is pure speculation.

The issues of appellant's contributory negligence would hinge upon her knowledge of the potential danger of the radiator erupting when a substance is poured into it, and her failure to take immediate steps to treat the injury as warned. These are jury questions.

I would reverse the trial court's order of dismissal by summary judgment and remand the case for trial.