[No. 36413.   Department Two.   November 21, 1963.]

CONKLIN DAVIS, *Respondent,* v. EARLY CONSTRUCTION
COMPANY, *Appellant.**

*Reported in 386 P. (2d) 958.

*Lycette, Diamond & Sylvester* and *John P. Lycette, Jr.,* for appellant.

*Robert H. Thompson* (of *Walthew, Warner & Keefe*), for respondent.

HAMILTON, J.—Plaintiff (respondent), while engaged in extrahazardous employment, sustained personal injuries. Relying upon RCW 51.24.010,[1] he instituted suit against defendant (appellant) alleging third party negligence. A jury trial ensued. Defendant appeals from an adverse verdict and judgment.

On the morning of December 1, 1959, plaintiff was employed by the B & B Glass Company, of Tacoma, Washington (hereafter referred to as B & B), to assist in unloading a freight car of glass. The glass was packed in narrow crates, approximating 6 by 10 feet in size and weighing up to 1,500 pounds each. One of the crates fell on plaintiff, producing the injuries involved.

Defendant, pursuant to an oral request from the president of B & B, furnished a forklift and two men to assist in the unloading operation. The parties disagree as to the employment status of the men, particularly the one operating the forklift. Plaintiff contends the men were at all times employees of defendant. Defendant contends they became the loaned servants of B & B.

At and in the freight car, where the accident in question

[1]"If the injury to a workman is due to negligence or wrong of another not in the same employ, the injured workman or, if death results from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this title or seek a remedy against such other, . . . " RCW 51.24.010.

occurred, four men participated in unloading the crates—plaintiff, another employee of B & B, one of the men furnished by defendant, and the forklift operator. At the time of the accident, the B & B employee was absent.

Removal of a crate from the freight car was accomplished by standing it on edge, fastening a chain around each end, hooking an open hook from the lift to the slack chain between the ends, raising the crate slightly, positioning a man at each end to steady and guide it, and maneuvering it through and out the freight car door. On occasions, depending upon the size of the crate and its location in the car, it was necessary to move the crate in the car, unhook, manually hold it upright, relocate the lift, rehook, and then maneuver it through the car door.

There is a conflict in the testimony as to how the accident happened. Defendant's witnesses testified that a crate had been moved from the rear of the car, unhooked, and plaintiff and defendant's employee were holding it upright while the lift was being relocated; that plaintiff, contrary to cautionary directions, was holding the crate in the center instead of at the end; and that the crate tipped and fell upon plaintiff. Plaintiff's version was that the crate was hooked up and the operator of the lift, as he raised the crate from the floor, "jiggled" it to level and balance it, causing the open hook to disengage and the crate to tip and fall.

Plaintiff's theory was that the lift operator was negligent in attempting to unload the crate without a full crew, or that the operator was negligent in "jiggling" the load while lifting it with an open hook.

Defendant first challenges the sufficiency of the evidence to support a finding of negligence.

We have oft repeated the rule that a challenge to the sufficiency of the evidence, or a motion for nonsuit, dismissal, directed verdict, new trial, or judgment notwithstanding the verdict, admits the truth of the opponent's evidence and all inferences which can reasonably be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in a light most favorable to the opponent. No element of discretion is

involved. Such motions can be granted only when the court can say, as a matter of law, there is no substantial evidence to support the opponent's claim. *Frasch v. Leedom,* 62 Wn. (2d) 410, 383 P. (2d) 307; *Miller v. Payless Drug Stores of Washington, Inc.,* 61 Wn. (2d) 651, 379 P. (2d) 932; *Lambert v. Smith,* 54 Wn. (2d) 348, 340 P. (2d) 774; *Williams v. Hofer,* 30 Wn. (2d) 253, 191 P. (2d) 306.

Interpreted in the favorable light required, plaintiff's evidence fairly imports, and would support findings that the lift operator directed the unloading operations; that, except at the time of the accident, three men worked in the car maneuvering the crates, one at each end and one hooking the chain to the lift; that the lift hook was an open one; that due to the absence of the third man, plaintiff was required to both steady the crate and hook the chain; and that, in undertaking to mechanically level and balance the load, the lift operator negligently lowered the hook causing it to disengage and permit the crate to fall.

Defendant's evidence, in contrast, was uncertain as to the number of men on the job and as to the hook mechanism of the forklift, and in conflict with plaintiff's evidence as to why the crate fell.

The trial court did not err in denying defendant's motions.

■ Defendant assigns error to the refusal of the trial court to submit an instruction on unavoidable accident. In *Cooper v. Pay-N-Save Drugs, Inc.,* 59 Wn. (2d) 829, 835, 371 P. (2d) 43, after an extensive review of previous decisions relating to unavoidable accident instructions, we stated:

"Running as a thread through most of our former decisions that we have reviewed, is the thought, stated affirmatively, that it is proper to give the instruction if there is affirmative evidence that an unavoidable accident occurred; stated negatively, it is error to give the instruction if there is no evidence of an unavoidable accident or if the only issue possible under the facts is that of negligence and contributory negligence. . . ."

Our review of the record in the case at bar reveals no affirmative evidence indicating that, but for the interven-

tion of human error, the crate would have otherwise fallen. The issues of negligence and contributory negligence were submitted to the jury. The trial court did not err in refusing to submit an unavoidable accident instruction.

Defendant next contends the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict, because, defendant asserts, the evidence conclusively and without dispute establishes that, as a matter of law, the lift operator became the loaned servant of B & B. Thus, defendant argues, plaintiff's third party negligence action under RCW 51.24.010 fails, and defendant is immune from suit, or, in any event, is exonerated of vicarious liability. Plaintiff, just as vehemently, argues that the evidence establishes, as a matter of law, that the lift operator was at all times the employee of defendant.

In approaching this assignment of error, and the arguments revolving about it, it is important to bear in mind that the fact B & B and defendant were both engaged in extrahazardous callings (a fact stipulated to by the parties) is of no significant consequence, for RCW 51.24.010 provides immunity to the employer only. RCW 51.24.010 is not a bar to an action against a negligent third party, whether such party be engaged in extrahazardous employment or not. *Greenleaf v. Puget Sound Bridge & Dredging Co.,* 58 Wn. (2d) 647, 364 P. (2d) 796; *Fisher v. Seattle,* 62 Wn. (2d) 800, 384 P. (2d) 852.

It is essential, then, to place the parties to the instant case in proper perspective. It is undisputed that plaintiff, at the time of the injury, was an employee of B & B. It is not contended that plaintiff was a loaned servant of defendant. Defendant admittedly was the general (as distinguished from the special) employer of the lift operator and the owner of the lift equipment. Plaintiff—not the lift operator—is seeking redress against defendant as a third party tort-feasor. Defendant, as a third party tort-feasor, is not afforded immunity under the Workmen's Compensation Act. The burden of establishing the essentials of defendant's vicarious liability is upon plaintiff. The burden of avoiding liability upon the basis of the loaned

servant doctrine is upon defendant. *Clarke v. Bohemian Breweries, Inc.,* 7 Wn. (2d) 487, 110 P. (2d) 197.

The question presented by this assignment, then, turns upon the applicability of the loaned servant doctrine rather than upon the interpretation of and the immunity provided by RCW 51.24.010. The issue is vicarious liability, not statutory immunity.

The spotlight thus focuses primarily upon the two employers—the business in which each is respectively engaged, the work being performed at the time of the accident and its relationship to the business of the respective employers, the terms and nature of their agreement, the necessity for special equipment, the ownership, operation, and protection of such equipment, the need for and employment of the operator, the right of control over the equipment and operator, and such other surrounding factors as throw light upon the employment relationship. Generally speaking, a factual issue is presented. 1 Restatement, Agency (2d) § 227, p. 500.

We have in a number of cases[2] considered the loaned servant doctrine with varying results, dependent upon the factual pattern. In *Macale v. Lynch,* 110 Wash. 444, 448, 188 Pac. 517, we state the general rule which we have applied:

" . . . It is, of course, well settled law that one who is in the general employ and pay of one person may be loaned, or hired, by his employer to another, and when he undertakes to do the work of the other he becomes the servant of such other, to perform the particular transaction.

[2]*Wiest v. Coal Creek R. Co.,* 42 Wash. 176, 84 Pac. 725; *Christiansen v. McLellan,* 74 Wash. 318, 133 Pac. 434; *Boe v. Hodgson Graham Co.,* 103 Wash. 669, 175 Pac. 310; *Olsen v. Veness,* 105 Wash. 599, 178 Pac. 822; *Locomotive Exch., Inc. v. Rucker Bros.,* 106 Wash. 278, 179 Pac. 859, 184 Pac. 848; *Macale v. Lynch,* 110 Wash. 444, 188 Pac. 517; *Pearson v. Arlington Dock Co.,* 111 Wash. 14, 189 Pac. 559; *Machenheimer v. Department of Labor & Industries,* 124 Wash. 259, 214 Pac. 17; *Burchett v. Department of Labor & Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; *B. & B. Bldg. Material Co. v. Winston Bros. Co.,* 158 Wash. 130, 290 Pac. 839; *Walter v. Everett School Dist. No. 24,* 195 Wash. 45, 79 P. (2d) 689; *Clarke v. Bohemian Breweries, Inc.,* 7 Wn. (2d) 487, 110 P. (2d) 197; *McHugh v. King Cy.,* 14 Wn. (2d) 441, 128 P. (2d) 504.

*Standard Oil Co. v. Anderson,* 121 U.S. 480; *Olsen v. Veness,* 105 Wash. 599, 178 Pac. 822. The controlling facts in these cases, and in all others which support the rule, is that the servant must have been in the exclusive control of the one to whom he is loaned, and if so such servant becomes, *pro hac vice,* the servant of him to whom the exclusive control so passes, and not otherwise. . . ."

In the instant case, the evidence reveals that the defendant was primarily engaged in the construction business. At the time of the incident here involved, due to the season of the year, defendant's business was slack, the forklift was idle, and the employees engaged in casual maintenance work about the shop. Plaintiff's employer, B & B, was engaged in the glass business, and on occasion dealt with defendant in connection with defendant's construction work. The unloading operation involved 90,000 pounds of crystal glass for use in B & B's business. B & B had no unloading equipment of its own, and on previous occasions had contracted the services of a crane or other lifting device to unload similar shipments. On this occasion, B & B's president telephoned the president of the defendant company, with whom he was personally acquainted, and asked to "borrow" a forklift and a "man or two" to operate it. Defendant's president complied, maintaining the men upon defendant's payroll. Subsequently, defendant billed B & B in the sum of $59.28, including tax, for "Labor to unload car of glass on December 1 and 2, 1959," which was paid. B & B recognized that defendant could have recalled the men and equipment at any time during the unloading operation. On the job, the B & B foreman was generally in charge. He instructed the men on how to handle the crates of glass, where they were to go in the warehouse, and upon safety measures. He did not give specific directions as to the operation and management of the forklift. Except for occasional visits to the freight car, the foreman remained in the warehouse, some distance away, supervising the stacking of the crates. According to plaintiff's testimony, the lift operator took charge of the unloading operation. From defendant's evidence, it could be reasonably inferred that the B & B foreman was in control.

Apropos to our conclusion, upon the factual pattern presented, is our statement in the *Macale* case, *supra* (p. 448):

". . . In the case at bar, the evidence fails to establish that the driver, Nolan [the lift operator in the instant case], was, at the time of the accident, in the exclusive control and direction of Barnes [B & B in the instant case] with that clearness and certainty necessary to enable us to say, as a matter of law, that he was then the servant of Barnes and not the servant of appellant [defendant in the instant case]. . . ."

By the same token, we cannot say, as a matter of law, that the lift operator remained the servant of the defendant.

A question of fact was presented. The trial court did not err in denying defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

■ In support of its alternative motion for a new trial, defendant contends the trial court erred in failing to submit to the jury the fact issue raised by the interposition of the loaned servant doctrine. Instead, the trial court instructed the jury that the lift operator was an employee of defendant. This was error warranting a new trial. Plaintiff, however, asserts, first, that defendant did not plead the loaned servant doctrine, and, secondly, the error was invited.

Rule of Pleading, Practice and Procedure 15(b), RCW Vol. 0, provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the

merits. The court may grant a continuance to enable the objecting party to meet such evidence."

■ The defendant pleaded the bar of the Workmen's Compensation Act. Early in the trial it became apparent that defendant was relying upon the loaned servant doctrine. Evidence was adduced bearing upon the employment status of the lift operator and the ownership of the forklift, some with and some without objection by the plaintiff. Defendant submitted proposed instructions covering the subject, which counsel and the court discussed during the trial. Although plaintiff's counsel objected, the trial court considered the evidence adduced and the application of the loaned servant doctrine thereto in passing upon defendant's trial motions. Other than asserting that the doctrine had not been pleaded, plaintiff did not seek to show in what manner admission of the evidence would prejudice the maintenance of his action. Plaintiff did not request a continuance.

Our review of the record satisfies us that within the purport and intent of Rule of Pleading, Practice and Procedure 15(b), RCW Vol. 0, the trial court properly deemed the issue present and the pleadings amended to conform to the proof.

■ Secondly, plaintiff contends the error was invited. Without detailing the colloquy between the trial court and respective counsel, it is sufficient to say that the trial court was, in rather unequivocal language, invited by both plaintiff and defendant to rule upon the employment relationship involving the lift operator as a matter of law. The trial court did, however, in ruling upon the issue, recognize that a factual issue could be present and reserved to both parties an exception to its ruling and to the manner in which it instructed upon the subject. Defendant did, thereafter, without objection of either the trial court or plaintiff, fully except to the instructions given by the trial court upon the subject and to the failure of the trial court to give a proposed instruction submitting the issue to the jury. Under such circumstances, we can not say that defendant is now precluded from claiming the error asserted.

The action is remanded for new trial. Costs will abide the results.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

January 28, 1964. Petition for rehearing denied.

*Reported in 387 P. (2d) 70.